# Exhibit A-4

# 06/18/2025
# Wildcatter Material Solutions LLC's Answer, Affirmative Defenses, and Reconventional Demand

1st JUDICIAL DISTRICT COURT FOR THE PARISH OF CADDO
STATE OF LOUISIANA

DOCKET NO. 654955 DIVISION: A; SECTION A

**LONE STAR SAND, LLC,**
***Plaintiff***

Filed: ______________________

**vs.**

**WILDCATTER MATERIAL SOLUTIONS, LLC**
***Defendant and Plaintiff-in-Reconvention***

______________________
DEPUTY CLERK

---

**DEFENDANT WILDCATTER MATERIAL SOLUTIONS, LLC'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, AND RECONVENTIONAL DEMAND**

---

COMES NOW, Defendant Wildcatter Material Solutions, LLC ("Wildcatter"), who responds to the allegations of Plaintiff Lone Star Sand, LLC ("Lonestar") as follows:

**ANSWER**

Wildcatter provides the following answers to the allegations in Lonestar's Petition for Breach of Contract and Damages:

1. Wildcatter admits that it is a Texas Limited Liability Company and that the principal office and registered agent office provided by Lonestar are correct. Wildcatter denies the rest of the allegations in Paragraph 1.

2. Admitted.

3. Admitted.

4. Wildcatter admits that it has been paid $3,500,000.00 on the Contract. Wildcatter also agrees that the payment received for Milestone 2 (which was due within fourteen days after the effective date of the contract but was paid late) was short by $190,000.00. Wildcatter denies that this is the remaining balance owed on the Contract and would show that it is still owed a substantial amount by Lonestar.

5. Wildcatter admits that there is still $190,000.00 owed in connection with the original amount due for Milestone 2. The rest of the paragraph is denied.

Bradley Arant

PGS 8 EXH ____ MIN ✓
CC ____ CP 8 MAIL ____ N/J ____
INDEX ______ REC ______ FAX ____
W/D DOC ______ CERT MAIL ______
SERVICE ____________________



$18.00

Caddo Parish
Filed Jun 17, 2025 3:54 PM
Sharon Newton
Deputy Clerk of Court
E-File Received Jun 17, 2025 3:43 PM

654955
A

6. Denied.

7. Wildcatter admits that construction of the silos is still not complete. The rest of the paragraph is denied.

8. Wildcatter admits that one of the silos suffered damage during a storm. The rest of the paragraph is denied.

9. Denied.

10. Denied.

11. Wildcatter admits that it retained Trinity Trucking and Construction, LLC ("Trinity") as a subcontractor on the project. There was a dispute between Wildcatter and Trinity regarding payment (largely due to Lonestar's changes to the scope and late payments to Wildcatter) which has since been resolved. Wildcatter denies that Trinity is still owed money in connection with the project at this time.

12. Wildcatter denies that there was any faulty workmanship or that Lonestar has suffered any damages in connection with the work. Wildcatter denies that it is only owed $583,646.30 because, for the reasons explained in Wildcatter's Reconventional Demand, the amount owed now is much higher.

13. Wildcatter denies that it is only owed $583,646.30 because, for the reasons explained in Wildcatter's Reconventional Demand, the amount owed now is much higher.

14. Denied.

15. Denied in part and admitted in part. At the time the change order was originally agreed to and later at the time demand was made for payment the full price of the scale ($150,000.00) was recoverable. Since the demand was made, Lonestar has returned the scale to Wildcatter and Wildcatter will credit this change order to the extent Wildcatter is able to mitigate its damages.

16. Denied.

17. Wildcatter admits that it did provide notice to Lonestar of its intent to place a lien on Lonestar's property. Wildcatter denies that a lien was ever recorded.

18. Denied

19. Denied.

20. To the extent necessary, Wildcatter denies all allegations and relief sought by Lonestar in its prayer for relief.

## AFFIRMATIVE DEFENSES

1. Wildcatter asserts that the damages complained of were caused by the acts of others including, but not limited to, the negligence, mismanagement, and delays of Lonestar and its other contractors.

2. Wildcatter asserts the defense of prior material breach.

3. Wildcatter asserts the equitable defenses of estoppel, waiver, unclean hands, and detrimental reliance.

4. Wildcatter asserts that the damages complained of were caused, in whole or in part, by Lonestar's failure to mitigate its damages.

5. Wildcatter asserts the defense of concurrent delay.

6. To the extent Lonestar asserts a warranty claim, Wildcatter asserts the defense of failure to satisfy a condition precedent—providing notice and an opportunity to cure to Wildcatter.

7. Wildcatter asserts the defense of offset.

## RECONVENTIONAL DEMAND

Now comes Wildcatter Material Solutions, LLC as Plaintiff-in-Reconvention and asserts the following causes of action against Defendant-in-Reconvention Lone Star Sand, LLC.

**A. Factual Background.**

1. On or about June 28, 2024, Wildcatter and Lonestar entered into that certain Contract for the Sale of Equipment and Services (the "Contract"), for equipment and materials to be provided to Lonestar's facility at 11179 Hwy 3049, Belcher, LA 71004 (the "Facility" or the "Site").

2. Under Section 3, the terms of payment provided as follows:

**Section 3. Terms of Payment**

**(a) Seller shall submit invoices to Buyer in accordance with the following Project Milestones:**

| PROJECT MILESTONE NUMBER | PROJECT MILESTONE | PORTION OF CONTRACT PRICE DUE |
|---|---|---|
| 1 | Execution of this Contract | $2,300,000.00 |
| 2 | Fourteen (14) days after the Effective Date | $1,390,000.00 |
| 3 | Delivery of the Performance Testing Completion Notice (as defined below) | $ 410,000.00 |
| | TOTAL | $4,100,000.00 |

3. Because the Effective Date of the Contract was defined as June 28, 2024, this meant that $2,300,000.00 was due on June 28, 2024, and that an additional $1,390,000.00 was due on July 12, 2024. There was no condition on these payments other than the passage of time and in fact, Wildcatter could not begin to order several pieces of the equipment until it received payment from Lonestar.

4. In its first of many breaches to come, Lonestar did not pay the full amount of Milestone 2 when it was due. Lonestar admits in its petition that it breached the Contract by failing to pay the full amount of Milestone 2 but provides the erroneous excuse that "Wildcatter did not complete its performance on Milestone 1 within thirty (30) days from the receipt of the Milestone 1 payment". This excuse is not legitimate (and makes no sense) because payment on Milestone 2 was due within fourteen days of the Effective Date—far in advance of the alleged breach at day thirty (30).

5. In fact, by July 12, 2024 (the day Milestone 2 was due), Lonestar had not even completed paying for Milestone 1. Lonestar did not complete payment of Milestone 1 until July 16, 2024, and made several smaller payments between July 16, 2024 and August 2, 2024, which in the aggregate totaled $3,500,000.00. This is $190,000.00 short of the $3,690,000.00 owed by July 12, 2024. These delays in payment meant that Wildcatter could not purchase the burner equipment when necessary for delivery on schedule.

6. Moreover, Lonestar not only delayed the project through late and short payments, Lonestar also delayed the project by directing Wildcatter's subcontractors and people on site to perform work on another location owned by Lonestar which was not the "Site" defined under the Contract. For example, Lonestar pulled the subcontractor Wildcatter had scheduled to pour the foundation (a subcontractor Wildcatter had hired at the recommendation of Lonestar) for the silo project to pour concrete at another location for Lonestar.

7. Lonestar then used the failure to pour the foundation and receive the burner (both of which were directly caused by its own actions) as an excuse to not make payment on Milestone 2—which was already far past due.

8. Lonestar's delays in payment caused several disruptions to the project, including delays in ordering equipment and materials, increased material prices, and lost efficiency. Further, Lonestar's delays in payment and re-directing labor slowed down the delivery and installation of the silos such that they were not fully installed when a storm hit which damaged the silos. Were it not for the delays of Lonestar, the silo's roof bolts would have already been in place and secured when the storm occurred and there would have been no damage to the silo.

9. Lonestar also requested additional equipment, including an additional truck scale which cost $150,000.00. A change order for the additional scale was originally sent to M. Burns in August 2024, who acknowledged receipt of the change order and did not ask for the scale to be removed but merely mentioned that "I did not see on the change order that the concrete work was included. Can you please revised and resend." It was not until months later that Lonestar decided

(for the first time) that they no longer wanted the scale and would pretend they never requested the additional equipment to avoid paying for it.

10. On October 25, 2024, Wildcatter sent an invoice to Lonestar in the amount of $134,198.50. This invoice was for additional labor and services Lonestar had requested Wildcatter's personnel perform at Lonestar's other facility.

11. On October 27, 2024, Wildcatter sent an invoice to Lonestar in the amount of $190,000.00 for the remaining amount due on Milestone 2.

12. On October 27, 2024, Wildcatter sent an invoice for "Change Order #1" in the amount of $150,000.00 which was for an additional truck scale which Lonestar requested that Lonestar purchase for Wildcatter's Facility.

13. On October 29, 2024, Wildcatter's Chad Mikulec reached out to Lonestar to demand payment on the $474,198.50 owed. Mr. Mikulec informed Lonestar that if the amount owed was not paid by November 1, 2024, Wildcatter would move forward with terminating the contract under Section 3(c) which provides:

> Invoices shall be due upon receipt by Buyer. If the entire amount set forth on an invoice is not received by Seller within fifteen (15) days of the date set forth on the invoice, the unpaid portion of such invoice shall be subject to an interest charge equal to one and one half percent (1.5%) per month prorated on a daily basis. If Buyer fails to remit payment when due and payment is more than 3 (three) days past the invoice due date, Seller shall have the right to suspend the work. Seller will advise Buyer of intent to suspend within 1 (one) day of payment overdue date. In the event Buyer does not release payments after such notification, Seller will suspend all work and upon an additional five (45) day notification, Seller shall have the right to terminate this Contract...

14. On December 23, 2024, Wildcatter sent an additional invoice to Lonestar in the amount of $33,201.00 for additional labor and services Lonestar had requested Wildcatter's personnel perform at Lonestar's other facility.

15. After several attempts to come to an amicable resolution, Wildcatter terminated the Contract on January 17, 2025. In its termination letter, Wildcatter demanded payment of $583,646.40 which is calculated as follows:

$4,100,000 [Contract Price]

\+ $150,000.00 [CO #1]

\+ $167,399.50 [two invoices for work performed at other sites])

\- $333,753.20 [the amount it would have cost Wildcatter to complete the work had the contract not been terminated]

\- $3,500,000.00 [prior payments received]

---

**$583,646.40**

16. After Wildcatter's termination of the Contract, Lonestar refused to allow Wildcatter access to the site and committed several unlawful acts of conversion against the property of Wildcatter, including:

a. Refusing to return and continuing to use (without payment) a work truck and manlift left at the Project Site;

b. Unlawfully cutting a key for the Wildcatter work truck left at the site so that Lonestar's employees could continue to gain access and use it;

c. Selling Wildcatter's silo jacks remaining at the site (purchased by Wildcatter at an original price of $119,000) to a third-party and keeping the proceeds for itself; and

d. Taking and appropriating for its own use, Wildcatter's hand tools and materials left at site which were never paid for.

17. Lonestar also kept possession of the additional truck scale for several months despite refusing to pay for it but have since returned it to Wildcatter.

**B. Causes of Action.**

**i. Breach of Contract.**

18. The June 28, 2024, Contract was a valid and enforceable contract.

19. Lonestar breached the Contract by, among other things: i) failing to make payment when due; ii) intentionally interfering with Wildcatter's performance under the Contract; iii) failing to perform Lonestar's own obligations under the Contract; and iv) breach of the obligation to perform and enforce the Contract in good faith.

20. Moreover, the waiver of consequential damages is not enforceable due to Lonestar's bad faith performance and interference with the Contract pursuant to La. C.C. art. 1997.

21. Wildcatter has been damaged due to Lonestar's breach and is entitled to damages in the approximate amount of $583,646.40,[1] delay damages, lost profits and efficiencies on other projects, plus interest at the rate of 1½ % per month per the terms of § 3(c) of the Contract, and attorneys' fees.

**ii. Conversion.**

22. The tort of conversion under Louisiana law is strict liability and only requires a temporary, wrongful deprivation of the owner's rights to the property.

23. Lonestar converted Wildcatter's property by, including but not limited to:

a. Refusing to return and continuing to use (without payment) a work truck and manlift left at the Project Site;

[1] If the scale shown on CO #1 is sold, Wildcatter will credit the amount it was able to mitigate towards the balance.

b. Unlawfully cutting a key for the work truck left at the site so that Lonestar's employees could continue to gain access and use it;

c. Selling Wildcatter's silo jacks remaining at the site (purchased by Wildcatter at an original price of $119,000) to a third-party and keeping the proceeds for itself; and

d. Taking and appropriating for its own use, hand tools and materials left at site which were never paid for.

24. Lonestar's actions have caused additional damages (in excess of the breach of contract damages) which include, the market/replacement value of property disposed of and loss of use and/or rental value of property which was wrongfully withheld and used by Lonestar.

**iii. Quantum Meruit/Unjust Enrichment**

25. In the alternative, Wildcatter asserts that it is entitled to be paid for the value of its work performed at other locations and for Lonestar's wrongful use of Wildcatter's equipment pursuant to principles in equity.

**iv. Tortious Interference with Existing Contract.**

26. Lonestar knew that Wildcatter had existing contractual relationships with several of Wildcatter's subcontractors to perform work on the site specifically discussed on the June 28, 2024 Contract. Lonestar intentionally interfered with the contractual relationship between Wildcatter and its subcontractors by directing them to other locations and directing them to perform additional work. Lonestar's tortious interference caused disputes between Wildcatter and its subcontractors and delays on the project resulting in damage to Wildcatter.

**<u>CONCLUSION & PRAYER</u>**

WHEREFORE, Defendant/Plaintiff-in-Reconvention Wildcatter Materials Solutions, LLC prays that Plaintiff/Defendant-in-Reconvention Lone Star Sand, LLC take nothing on any and all claims therein and that instead, Wildcatter be awarded direct damages, consequential damages, loss of use damages, interest at 1½% per month, and attorneys' fees, in an approximate total cost in excess of $1,000,000.00 and for any and all additional relief to which it may show itself justly entitled, either at law or in equity.

**DATED: June 17, 2025**

Respectfully Submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

Timothy R. Cook
tcook@bradley.com
La. State Bar No. 41056
Justin T. Scott
jscott@bradley.com
*pro hac vice to follow*
600 Travis St., Suite 5600
Houston, TX 77002

**COUNSEL FOR WILDCATTER MATERIAL SOLUTIONS, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify, pursuant to La. C.C.P. arts. 1312 and 1313.A., that on June 17, 2025, I caused a true and correct copy of the foregoing to be served on counsel of record for all parties *via* email.

Timothy R. Cook